In the Matter of the Application of F. L. HEUGHES & Co., INC., Petitioner, for a Certiorari Order against ELMER F. ANDREWS, Industrial Commissioner of the State of New York, Respondent.

Third Department, March 15, 1934.

*MacFarlane & Harris* [*William MacFarlane* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*John R. O'Hanlon, Assistant Attorney-General,* of counsel], for the respondent.

BLISS, J.   This is a review by certiorari of a determination of the Industrial Commissioner of the State of New York made on July 27, 1933, under section 220 of the Labor Law ordering that the petitioner F. L. Heughes & Co., Inc., " pay the sum of $1.00 per hour to all ironworkers who have been or may hereafter be employed by it on the public work hereinbefore mentioned."

On February 11, 1933, petitioner, as a subcontractor, entered into a contract with MacDonald-Spencer Engineering Company, as general contractor with the State of New York, for the erection of the steel work of an addition to the Rochester State Hospital, located in the city of Rochester.   Work on this contract was commenced on April 27, 1933.   The subcontract for placing the reinforcing rod steel was held by one H. S. Wing.   On May 17, 1933, a verified complaint was filed with the State Department of Labor alleging that petitioner was not paying the prevailing rate of wages to ironworkers employed on this public work.   The Industrial Commissioner thereupon caused an investigation to be made by one P. A. Doyle, mediator, to determine the prevailing rate of wages for ironworkers in the locality, which in this instance was the city of Rochester.   A hearing was then noticed and at this hearing the investigator appeared as a witness and his report was received in evidence.   In addition to this investigator certain other witnesses were sworn.   The report of the investigator showed that he had called on certain employers in the city of Rochester and that they informed him as to six men employed in the city of Rochester setting reinforcing rods in concrete at one dollar per hour and two structural ironworkers employed in the city at the same rate. He also called on Mr. Harmon Hershey, of the Genesee Bridge Company, who informed him that he had five men employed on structural steel work at Brockport, N. Y., to whom he paid one dollar per hour.   In addition to this George W. Studley testified

that on some of the reinforcing rod work above mentioned he had six men employed at one dollar per hour who were doing unloading and assembling, which he stated was classed as iron work. . There appears to be some question as to whether these six men, or some of them, are included among the other workmen first above mentioned.

James D. Earnest, the complainant, testified as to certain information which he had concerning men doing iron construction work but gave no direct testimony on the subject. The hearing commissioner also received in evidence a sworn statement from the Karl Koch Erecting Co., Inc., to the effect that between January 11, 1933, and March 29, 1933, there were employed on the Rochester postoffice an average of twenty ironworkers a day, being paid at the rate of one dollar per hour.

In opposition to this testimony, Mr. B. A. Heughes, of the petitioner, testified that on April 27, 1933, the date when the public work in question was commenced, his firm had thirteen ironworkers. employed on private work in the city of Rochester who were being paid seventy cents per hour, and Thomas A. Leach, president of the Leach Steel Corporation, testified that during April and May, 1933, his corporation had four ironworkers employed at the rate of seventy cents per hour.

The petitioner duly objected to the reception in evidence of the report of Mediator Doyle on the ground that the same was hearsay. It specifically objected to the testimony relating to the ironworkers employed in the city of Brockport and moved to strike out that item, which motion was denied.

As to the right of the commissioner to receive hearsay evidence, there can be no doubt. He is not bound by technical rules of evidence and may conduct all hearings according to procedure prescribed by him. (Labor Law, § 41.) This, however, does not mean that a determination may be based upon hearsay evidence alone. There must always be a residuum of legal evidence. (*Matter of Carroll* v. *Knickerbocker Ice Co.*, 218 N. Y. 435.) In the instant case the only legal evidence in behalf of the complainant was that of the witness George W. Studley in relation to the six men doing unloading and assembling work.

The hearing commissioner in his determination ruled that the men employed by the petitioner, whether employed on the public work under investigation or on other work, might not be counted in determining the prevailing rate of wages. This ruling was made under the assumption that our court so held in *Matter of Carder Realty Corporation* v. *Perkins* (237 App. Div. 152). Such is not a correct interpretation of the opinion of this court in that case. There, at the outset, before the contractor placed any bricklayers

at work upon the public improvement, the prevailing rate in the locality was thirteen dollars and twenty cents per day and when the contractor placed its first bricklayer on the job it paid him at the rate of eight dollars per day. It then attempted to include the other bricklayers subsequently employed by it at the lower rate on the public work in question in determining the prevailing rate of wages in the locality. Our court held that when the first bricklayer was placed at work under the public contract in question it was the duty of the contractor to pay the then prevailing rate of wage, i. e., thirteen dollars and twenty cents per day, that it failed to do so and started the employment of its bricklayers at a prohibited and unlawful wage rate. Our court said: " The number of employees of petitioner who were paid an unlawful and prohibited wage should not be included with employees of other contractors who were paid the prevailing rate of wage in order to affect and change such prevailing rate. A decrease in a prevailing rate of wage may not be established by any such procedure, or by such evidence." We see in that language no rule against including employees engaged on other and private contracts of a contractor who is about to enter upon work under a public contract in determining the prevailing wage rate in that locality.

The wages being paid by this contractor on other and private contracts at the time of the commencement of the public work were not at a prohibited and unlawful rate as was the situation in the *Carder* case. We see no good reason why such employees should not be included, nor is there any statutory prohibition against it. By an amendment to paragraph a of subdivision 5 of section 220 of the Labor Law which became effective on May 3, 1933, it was provided: " Laborers, workmen or mechanics for whom a prevailing rate of wage is to be determined shall not be considered in determining such prevailing wage." Thus the Legislature spoke its mind. This amendment was in effect at the time of the filing of this complaint. The statute as thus amended does not exclude other employees of the same contractor where they are engaged on other and private contracts. It excludes only those for whom a prevailing rate of wage is to be determined. The ruling of the commissioner excluding petitioner's evidence as to the number of ironworkers employed by it on other and private contracts in the locality and the rate of wages paid to them was error.

The petitioner also contends that it was error to consider wages paid to reinforcing rod men in determining the prevailing rate of wages for structural steel erectors. The complaint and notice of hearing related to " ironworkers." The petitioner had the contract for erecting steel. It is significant that the setting of the reinforcing

rods was being performed under a separate and distinct contract by another contractor. Here there were two separate and distinct classes of work, performed by different workmen and under different subcontracts on the same general contract. The men who might be employed to set the reinforcing rods under this separate sub-contract themselves came within the statutory rule requiring that they be paid the wage rate prevailing in the locality for others engaged in rod setting. It would appear, therefore, on the record here before us that the inclusion of the reinforcing rod men in making this determination was error.

The admission by the commissioner of the evidence in relation to the five men working on structural steel work at Brockport was clearly error. (Labor Law, § 220, subd. 5, ¶ b.)

In view of these prejudicial errors the determination should be annulled and the matter remitted to the Industrial Commissioner, with fifty dollars costs and disbursements in favor of the petitioner against the respondent to abide the event.

RHODES, CRAPSER and HEFFERNAN, JJ., concur; HILL, P. J., dissents.

Determination annulled and matter remitted to the Industrial Commissioner, with fifty dollars costs and disbursements in favor of the petitioner against the respondent to abide the event.